IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 1:07CR318-1 |
| v. | : | |
| CHIRAGI KOTHARI | : | |

GOVERNMENT'S TRIAL BRIEF

**Summary of the Government's Evidence.**

Mrs. Aparna Patel is the wife of a Wake Forest University faculty member. On or about July 8, 2007, Mrs. Patel received an email ("the July 8th email"), a printout of which is attached as Exhibit "A". Shortly after receiving the email, Mrs. Patel and her husband, Dr. Ajay Patel, contacted the Federal Bureau of Investigation. At the request of the FBI, Mrs. Patel began responding to the sender of the email in an attempt to learn the sender's identity. Mrs. Patel and the sender of the July 8th email exchanged communications discussing the delivery of the $25,000 and other matters pertaining to the threat in the July 8th email over the course of the next two weeks. On or about July 12th, the sender suggested using the defendant as a person to act as an unwitting "go between" for the delivery of the $25,000.

Working with an IT analyst from Wake Forest University, the FBI learned that the WFU server account of the defendant had been accessed when the July 8th email was sent. The FBI also learned that the defendant was the girlfriend of Vikrant Prakash, a

former Wake Forest student whose name appears in the "Subject" line of the July 8th email. The defendant had recently taken a job in Cleveland, Ohio at the time the July 8th email was sent.

On July 23rd, two agents from the Cleveland FBI office interviewed the defendant at her residence. Once the agents identified themselves and said they were there in relation to threatening emails, the defendant told the agents that she knew why they were there. She told the agents that while a student at Wake Forest, she had become friends with Mrs. Patel and her husband. She went on to say that she and her boyfriend, Vikrant Prakash, spent quite a bit of time with the Patels while they were at Wake Forest. The defendant told the agents that one or two days prior to the interview, Mrs. Patel had asked her to help with a personal matter. She stated that Mrs. Patel had asked the defendant to travel to Winston-Salem to pick up a package and that Mrs. Patel did not want her husband to learn of the trip.

The defendant told the agents that after communicating with Mrs. Patel, she had contacted Mr. Prakash (who was living in New York City) and told him about Mrs. Patel's request. According to the defendant, Mr. Prakash had responded that he thought Mrs. Patel seemed to be unbalanced and that she (the defendant) should have nothing to do with her.

The defendant then told the agents that shortly after the conversation with Mr. Prakash, she had received an email from someone who identified himself only as "Alex". She stated that

"Alex" had told her that she had better agree to pick up the package from Mrs. Patel. When the agents asked what email account had been used for the communication from "Alex", the defendant stated that it had not been an email, but a telephone call that she had received from "Alex."

The defendant made several more inconsistent statements before the agents told her that they had copies of all the emails and that the emails did not correspond to the statements she had been making. At that point, the defendant told the agents that she would be honest with them and tell them what had happened. She told the agents that shortly before July 8th, she had accessed the email account of Mr. Prakash. Among his emails, she had seen several which led her to conclude that Mr. Prakash and Mrs. Patel had been engaged in a romantic relationship. The defendant went on to tell the agents that she was so upset by the emails that she wanted to hurt Mrs. Patel. It was then that the defendant started sending threatening emails from her laptop computer to Mrs. Patel using several different accounts in an effort to conceal her identity from Mrs. Patel.

The defendant told the agents that the reason she demanded $25,000 was because she felt that a figure that high would force Mrs. Patel to tell her husband about the situation, thereby causing Mrs. Patel further pain and embarrassment. At the conclusion of the interview, the defendant executed and signed a written statement.

On July 24, 2007, the defendant sent an email to Vikrant Prakash. The email begins:

> I know you are not expecting any email from me esp [sic] of this nature but I really need to apologise [sic] to you and many others for my crazy actions....

In the middle of the text, the defendant states:

> I found out what happ [sic] bet [sic] Aparna and you before you told me and lost my mind and blamed you and her for deceiving me and I could not control myself. Next day i [sic] thought about asking you directly but knew i [sic] would never believe you if you told me only if i [sic] asked you and could not believe what aparna [sic] did after seeing us together all the time. I blamed her for deciving [sic] ajay and you for lying to me. I believed she was the reason for us breaking us [sic] and just could not go on. I wanted to cause her pain that i [sic] was going through and wanted to find out the truth from you. I wanted to you [sic] to tell me out of your will about everything and wrote an email to aparna [sic] that I knew everything to blackmail her. I knew that would worry her and cause her the shame of even thinking of doing that. I also wanted to know from you and see if you trusted me and why you lied to me. That is why I forced her to write to me for help and told you then about it. THere [sic] was noone else involved but just me who was blackmailing her and I wanted to see if there was anything between you today....

**Potential Issues.**

1. Jury Instructions. The government would propose the following instruction as to the elements of the offense:

> Title 18, United States Code, Section 875(d) makes it a federal crime for anyone to knowingly and willfully send or transmit in interstate or foreign commerce a threat to injure the property or reputation of another.
> The defendant can be found guilty of that offense only if all of the following facts are proved beyond a reasonable doubt.
>
> One, that the defendant sent or transmitted in interstate commerce a communication containing a true threat to injure the reputation of another, as charged in the indictment;

Two, that the defendant sent or transmitted that
communication with intent to extort money or other thing of
value; and

Three, that the defendant did so knowingly and willfully.

To transmit something in interstate commerce means merely to send it from a place in one state to a place in another state.

A "true threat" means a serious threat as distinguished from idle or careless talk, or something said in a joking manner. A statement is a true threat if it was made under such circumstances that a reasonable person would construe it as a serious expression of an intent to injure the reputation of another person.

To act with intent to "extort" means to act with the intent to obtain money or something of value from someone else, with his or her consent, but induced by the wrongful use of actual or threatened fear.

The essence of the offense is the willful transmission of an extortionate communication in interstate commerce with the intent to obtain money or other thing of value, and it is not necessary to prove that the defendant actually succeeded in obtaining the money or other thing of value or that the defendant actually intended to carry out the threat.

Pattern Jury Instructions: Eleventh Circuit, Criminal Cases (2003), § 30.4. <u>United States v. Teplin</u>, 775 F.2d 1261, 1263 (4th Cir. 1985).

2. Admissibility of emails. Much of the evidence in this case will consist of printouts of emails; a) those that the defendant sent to Mrs. Patel, b) those that Mrs. Patel sent to the defendant, and c) the one that the defendant sent to Mr. Prakash. Printouts of data stored in a computer are considered to be originals under Rule 1001(3) of the Federal Rules of Evidence as long as the printouts are shown to reflect the data accurately.

3. Interstate Commerce. During the course of her interview with the Cleveland FBI agents, the defendant told them that 1) all the emails had been sent from her personal laptop computer, and 2) that the emails were all sent from her apartment in a Cleveland suburb. Mrs. Patel will testify that she received the July 8th email in Forsyth County, North Carolina.

The government may also call one or more expert witnesses to establish the interstate commerce element. These are Chris Avery and/or David McElwee from the FBI and Mike Rollins of Wake Forest's IT staff.

4. Rule 412. Rule 412 of the Federal Rules of Evidence provides limits as to what questions may be asked a victim in a case in sexual misconduct is alleged. Considering the circumstances of this case, it is the government's position that the provisions of Rule 412 apply to Mrs. Patel. Rule 412 ( c ) requires that the defendant give written notice before introducing any evidence of either sexual behavior or sexual predisposition. If such notice is filed, an *in camera* hearing must then be held. Furthermore, United States v. Doe, 666 F.2d 43 (4th Cir. 1981) gives the victim both the right to her own attorney and the right to an interlocutory appeal of the trial court's ruling should she so choose.

5. Defendant's proposed *voir dire* questions. Several of the questions submitted by the defendant will almost certainly be covered by the Court's standard *voir dire*. The government would

object to questions 4, 5 and 6 unless the defendant can show some particular need for those questions. As to questions 7 and 8, the government does not object to the jurors being told that the defendant and several of the potential witnesses are Indian and then asking them if this fact would make it difficult for them to be fair and impartial to either side. As to questions 9 and 10, the government would not object to the Court telling potential jurors that several people involved with the case are or have been connected with Wake Forest University and then asking if that fact would make it difficult for anyone to be fair and impartial to either side. As to question 11, it is the government's understanding that this series of questions is incorporated in the government's standard *voir dire*.

      6.    Defendant's proposed jury instructions. The instructions proposed by the defendant and those proposed by the government are very similar. The government would suggest that the instruction on "intent to extort" makes the instruction on "extort" unnecessary, particularly since in this case neither "force" nor "violence" apply. Furthermore, the defendant's proposed instructions also could lead the jury to think that they had to find that the defendant intended to extort $25,000 beyond a reasonable doubt. The defendant has cited no authority for this proposition and it is the government's position that the jury need only find that the defendant intended to extort "money or other thing of value", but no specific amount.

Finally, the Fourth Circuit has long held that "beyond a reasonable doubt" is a term better defined by jurors than by courts. <u>Murphy v. Holland</u>, 776 F.2d 470 (4th Cir. 1985). <u>United States v. Walton</u>, 207 F.3d 694 (4th Cir. 2000). While the instruction proposed by the defendant does not go far beyond the Court's time-tested instruction, it does go somewhat farther than necessary....and approved.

Respectfully submitted this the 13th day of November 2007.

        ANNA MILLS WAGONER
        United States Attorney


        /s/ Paul A. Weinman
        PAUL A. WEINMAN
        Assistant United States Attorney
        NCSB #8558
        251 N. Main Street, Suite 726
        Winston-Salem, NC 27101
        Phone: 336/631-5268
        Email: paul.weinman@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 1:07CR318-1 |
| v. | : | |
| CHIRAGI KOTHARI | : | CERTIFICATE OF SERVICE |

I hereby certify that on the 13th day of November, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Richard Deke Falls, Barnett & Falls, P.A., 130-C N. McDowell St., Charlotte, NC 28204 at deke@barnettfalls.com, and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participant: none.

Respectfully submitted this 13th day of November, 2007.

ANNA MILLS WAGONER
United States Attorney


/s/ Paul A. Weinman
PAUL A. WEINMAN
Assistant United States Attorney
NC Bar # 8558
251 N. Main Street, Suite 726
Winston-Salem, NC 27101
Phone: 336/631-5268
E-mail: paul.weinman@usdoj.gov